UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUISE M. CHOATE,                         Case No. 17-10096

    Plaintiff                         John Corbett O'Meara
v.                                        United States District Judge

COMMISSIONER OF SOCIAL                    Stephanie Dawkins Davis
SECURITY,                                 United State Magistrate Judge

    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 18)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On January 11, 2017, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). This case was referred to the undersigned magistrate for all pre-trial purposes. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 14, 18). Plaintiff also filed a reply in support of her motion for summary judgment. (Dkt. 19).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims for a period of disability and disability insurance benefits on January 21, 2014, alleging disability beginning April 1, 2005.

(Tr. 13).[1]  The claim was initially disapproved by the Commissioner on April 3,

2014.  (Tr. 13).  Plaintiff requested a hearing, and on August 24, 2015, she

appeared and testified, with the assistance of her attorney, before Administrative

Law Judge (ALJ) B. Lloyd Blair, who considered the case *de novo*.  (Tr. 25-45).

Plaintiff amended her alleged onset date to June 30, 2009.  (Tr. 15).  In a decision

dated November 12, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 10-

21).  Plaintiff requested a review of this decision, and the ALJ's decision became

the final decision of the Commissioner when the Appeals Council denied

plaintiff's request for review on November 7, 2016.  (Tr. 1-6); *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED**, pursuant to Sentence Four.

## II.    FACTUAL BACKGROUND

A.    <u>ALJ Findings</u>

Plaintiff was born in 1959 and was 51 years old on the date last insured,

December 31, 2010.  (Tr. 15, 19).  Plaintiff had past relevant work as a

---

[1] The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and found at Docket Entry 10.

housekeeper, which is classified as medium work.  (Tr. 19).  Plaintiff stopped

working on April 1, 2005 because of her conditions.  (Tr. 128).  The ALJ applied

the five-step disability analysis to plaintiff's claim and found at step one that

plaintiff had not engaged in substantial gainful activity since the amended alleged

onset date through the last date insured.  (Tr. 15).  At step two, the ALJ found that

plaintiff's obesity, degenerative disc disease of the lumbar spine, status-post digit

reattachment surgery – non dominant left hand, osteoarthritis, right hip, and

fibromyalgia were severe impairments.  *Id*.  At step three, the ALJ found no

evidence that plaintiff's combination of impairments met or equaled one of the

listings in the regulations.  (Tr. 16).  The ALJ determined that plaintiff had the

following residual functional capacity (RFC):

> After careful consideration of the entire record, the
> undersigned finds that, through the date last insured, the
> claimant had the residual functional capacity to perform
> light work as defined in 20 CFR 404.1567(b) except she
> can only occasionally bend, twist, and turn at the waist;
> and she can never climb ladders, ropes, or scaffolds. She
> must avoid walking on uneven surfaces and can never
> use foot controls. She can frequently, but not constantly,
> handle and finger objects with her non-dominant left
> upper extremity; and she cannot perform commercial
> driving.

(Tr. 26).  At step four, the ALJ concluded that plaintiff could perform her past

relevant work.  (Tr. 19).  Finally, the ALJ concluded that plaintiff has not been

under a disability from the amended alleged onset date through the last date
insured.  (Tr. 20-21).

    B.    <u>Plaintiff's Claims of Error</u>

According to plaintiff, the ALJ's finding that plaintiff retains the RFC to
"frequently but not constantly handle and finger objects with her non-dominant left
extremity . . .", despite amputation and reattachment of four of her fingers is not
supported by substantial evidence.  The medical evidence confirms that Ms.
Choate suffered amputation of her 2nd, 3rd , 4th and 5th digits of her left hand
from a table saw accident at home in April 2007.  (Tr. 373-76).  X-rays showed
multiple comminuted fractures and the fingers were surgically reattached.  *Id*.
Despite the surgery and some physical therapy, plaintiff says her left hand remains
severely deformed and nearly functionally useless.  As such, she cannot frequently
use her left hand as the ALJ found.

According to plaintiff, the medical evidence includes her hospital admission
on April 27, 2007, when she "sustained a left hand multiple amputation wound
including the second, third, fourth and fifth digits," which also involved "both
extensor and flexor tendons . . . the joints and bony tissue and nailbed . . . .," while
she was using a table saw at home. (Tr. 240-43, 373-75).  The operative report
reflects a detailed surgical account that included placement of "[m]ultiple K-wires"
. . . for each finger," and repair of the extensor and flexor tendons.  (Tr. 375-76).

Postoperatively, plaintiff followed up with Mohamad H. Bazzi, M.D., covering six office visits from April 30 to August 27, 2007, which reflect her consistent participation in occupational therapy. (Tr. 363-68). On August 27, 2007, Dr. Bazzi recorded that Ms. Choate was . . . very anxious complaining of persistent pain with only gradual recovery noting that she is having a very difficult time going through her occupational therapy and rehabilitation." (Tr. 368). On examination, Dr. Bazzi observed that plaintiff "is a long way from normal and full recovery," noting that her "left hand shows only gradual increase in range of motion especially at the MCP joints," and "[t]he second and third digits are still more stiffer (sic) than the fourth and fifth digits" and "she is able to slightly better oppose the digits to the thumb and is able to grab some objects, but she is a long way from normal and full recovery." *Id*. In February 2009, Dr. Athens commented on plaintiff's history of left finger disfigurement secondary to trauma two years ago and noted that her finger was disfigured. (Tr. 328). When she was examined in March 2009, Dr. Torregross reported that plaintiff has had "chronic persistent problems with hand function present" since the 2007 injury and reattachment surgery. (Tr. 349). On examination, she had extensive degenerative changes in her left hand. *Id*. A claims interviewer observed on February 4, 2014 that plaintiff had trouble using her hands and that her "pointer finger in the left hand is severely bent over … ." (Tr. 117-18). Plaintiff also testified that since the

hand surgery, she has no strength in her left hand and her fingers are always curled and she can only use her thumb. (Tr. 36). She cannot extend her fingers, cannot grasp, needs help dressing, she uses a grabber assistive device to put on socks and dress and cannot zip or tie shoes. (Tr.32, 33, 35-39). Thus, the severe problems with plaintiff's left hand persisted both before and after her date last insured of December 31, 2010.

In his decision, the ALJ cited the medical evidence referenced above, including Dr. Bazzi's notation in August 2007 that "the claimant was still 'a long way from a normal and full recovery'" and Dr. Torregrosa's March 2009 evaluation where "[t]he claimant complained of chronic persistent problems with left hand function since her reattachment surgery, exhibiting left hand degenerative changes and right hand soft tissue swelling." (Tr. 17-18). Despite this evidence, the ALJ claimed:

> [w]hile the amputation and reattachment of the digits of her left hand appears to have initially significantly limited her manipulative abilities with that hand, the hand progressively improved through the medical record, and though it does not appear to have recovered to is level pre-amputation, there is no evidence that the claimant cannot perform manipulative abilities, nor is it her dominant hand.

(Tr. 19). According to plaintiff, the ALJ's finding of progressive improvement is simply not supported by the medical evidence cited by the ALJ, particularly the:

(1) August 2007 progress note that she continued to have reduced range of motion

and plaintiff was only was able to slightly better oppose her digits to her thumb only and could grab some objects, and was still a "long way from normal and full recovery"; (2) the March 2009 evaluation documenting degenerative changes of an "extensive nature" of the left hand with "[c]hronic persistent problems" since the reattachment surgery; and (3) the observations of the claims worker that the "pointer finger in the left hand is severely bent over . . ." (Tr. 117, 349, 369). Given this evidence, plaintiff maintains that her hand did not, in fact, "progressively improve" as the ALJ found. (Tr. 19). And, plaintiff contends that is certainly does not equate to an ability to finger and handle frequently as the ALJ found, rather it shows she could barely, i.e., rarely, finger, handle and grasp.

In a related claim of error, plaintiff complains that there was no physician's opinion or other medical opinion suggesting that she could frequently use her left hand. As set forth in SSR 83-10, light work entails the "use of arms and hands to grasp and to hold and turn objects" and "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251 (S.S.A. 1983). Moreover, "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity." SSR 96-9p, 1996 WL 374185 (S.S.A. 1996). Plaintiff maintains that she cannot do the required fine manipulations, handling and grasping required of light or sedentary jobs. The ALJ determined plaintiff could perform other light jobs in

representative "light unskilled occupations" such as packer, bench assembler, and inspector. (Tr. 20). In so finding, the ALJ relied on the testimony of a vocational expert (VE) who confirmed that each of these jobs required frequent, bilateral handling and would be precluded if the individual were limited to occasional fingering and handling. (Tr. 20, 42, 44). The VE further testified that there are no jobs available for an individual who could not frequently handle with both hands. (Tr. 44). Thus, plaintiff maintains that the ALJ's finding that she could perform these three representative jobs, all of which require frequent fingering and handling, cannot be sustained, particularly where the record is devoid of any RFC or medical source statements from any medical providers, whether treating, consulting, or non-examining, which supports a light work finding. Plaintiff points out that there was no State agency doctor opinion upon which the ALJ did or could have relied nor any consultative examination or medical consultant's opinion sought by the ALJ. Since the record did not contain any other assessment of plaintiff's functional limitations, plaintiff contends that the ALJ took on the role of medical expert and improperly translated the raw medical data into functional limitations. Thus, the ALJ's RFC finding cannot be sustained.

Plaintiff points to *Porzondek v. Secretary of Health and Human Servs*., 1993 WL 15135 at *2 (6th Cir. Jan. 22, 1993) (unpublished) in support of her argument. In *Porzondek*, the medical evidence of record was inadequate to form a basis for

the ALJ's finding regarding the claimant's residual functional capacity. *Id*. The

record did not expressly describe the claimant's residual functional capacity, nor

did it provide any significant direct evidence regarding his flexibility or strength.

*Id*. The Commissioner's failure to order a consultative examination or to seek the

advice of a medical examiner resulted in a failure to meet his burden of proof. *Id*.

Plaintiff also relies on *Gross v. Comm'r of Soc. Sec.*, 2017 WL 1151099 (E.D.

Mich. Mar. 28, 2017), the court held that the ALJ's RFC determination was not

supported by substantial evidence and remanded "to obtain a proper medical

source opinion and for the redetermination of Plaintiff's RFC" and, if necessary,

ordering additional opinion evidence. *Id*. at *5. The court commented that the

district court cases cited above "do not require the ALJ to entirely base his or her

RFC finding on the opinion of a physician — they require the ALJ's RFC

assessment be supported by substantial evidence and not merely on the ALJ's own

medical interpretation of the record." *Id*. at *4. The court noted that an ALJ

cannot substitute his or her opinion for the medical experts. *Simpson v. Comm'r of

Soc. Sec*., 344 Fed. Appx. 181, 194 (6th Cir. 2009) (finding that the ALJ

impermissibly substituted the treating physician's medical opinion with her own

where he assessed the potential pain pelvic adhesions would cause); *Nguyen v.

Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person . . . the ALJ was simply

not qualified to interpret raw medical data in functional terms" where "no medical

opinion supported the [RFC] determination.").  The court further held that this was not a case "where the medical evidence shows relatively little physical impairment, such that the ALJ can make a commonsense judgment about Plaintiff's functional capacity," citing the "significant evidence in the record indicating that Plaintiff was admitted to the hospital for five days due to leg pain and thigh rash, reporting severe pain"; "underwent treatment for back and shoulder pain"; "had a tender cervical spine with limited flexion and extension" and "suffered from weakness in the right upper extremity."  *Id*. at *5.  Accordingly, the court concluded that "although there are likely instances in which an ALJ can formulate an RFC without the aid of opinion evidence, this is not one of those cases" and remanded for further development.  *Id*.

Here, plaintiff asserts that the evidence of record in this case is similar, as noted above, as it includes several MRIs and x-rays which require medical expertise to interpret; an admission for finger reattachment surgery with subsequent evidence documenting extensive degenerative changes of the left hand; and treatment for back, shoulder and knee pain and fibromyalgia.  Thus, plaintiff asks the Court to remand with instructions to obtain additional opinion evidence to assistance in assessing her RFC.

Plaintiff also argues that the ALJ's credibility analysis is not supported by substantial evidence and that the Commissioner failed to sustain her burden at Step Five that there was other work in the economy that plaintiff could perform.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner spends much of her brief analyzing plaintiff's credibility, but this summary will focus on the primary issues raised by plaintiff – whether the ALJ's conclusions regarding her hand function is supported by substantial evidence and whether the ALJ erred by not relying on any medical opinions regarding plaintiff's functional limitations in formulating her RFC. According to the Commissioner, although plaintiff asserts that the fingers of her non-dominant hand are "nearly functionally useless," she does not cite any evidence to support that assertion and she does not identify any specific, functional, work-related limitations on her ability to use the fingers of her non-dominant hand that go beyond the limitation contained in the RFC finding. According to the Commissioner, the ALJ properly discounted the credibility of plaintiff's allegations based, in part, on her admissions about her activities of daily living. Several of those activities – such as folding laundry and preparing meals (Tr. 138) – require manipulative abilities that are not inconsistent with the RFC finding. In addition, the Agency repeatedly asked plaintiff to identify the impairments that limited her ability to work. (Tr. 30-31, 136). In her responses, plaintiff repeatedly

omitted the impairment to her non-dominant hand.  (Tr. 31, 136).  Moreover, when

the Agency asked plaintiff to identify the items that her impairments affected and

explain how they affected her (Tr. 141), she neither identified the impairment to

her non-dominant hand nor identified any manipulative limitations.  *Id.*  Plaintiff

emphasizes that one of her providers "noted that her finger was disfigured" (Pl's

Mem. 13, referring to Tr. 328).  According to the Commissioner, that notation is

essentially a diagnosis and, as stated previously, "[t]he mere diagnosis of [a

condition], of course, says nothing about the severity of th[at] condition."  *Higgs*,

880 F.2d at 863.  It therefore suffices to observe that the cited notation appears in a

series of handwritten treatment notes that span from late 2008 until mid-2010 (Tr.

327-29), and those notes do not appear to contain either (a) any other reference to

plaintiff's hands or (b) any indication about any specific, functional, work-related

limitations arising from the impairment to the fingers of plaintiff's non-dominant

hand.

The Commissioner points out that the transcript in this case does not contain

any evidence from any doctor (or any other health professional) opining that the

impairment to the fingers of plaintiff's non-dominant hand caused any limitations

beyond those set forth in the RFC finding.  And, even if plaintiff could sustain her

burden of establishing that the ALJ erred when he discounted her credibility that

she had unspecified manipulative limitations beyond those set forth in the RFC

finding, the Commissioner maintains that plaintiff could not sustain her separate

burden of establishing that any such error caused her to suffer any prejudice.  More

fully, the ALJ ultimately found that plaintiff was not disabled by relying on the

VE's testimony that a person with plaintiff's background and RFC could perform a

significant number of jobs as a sorter (Tr. 20-21, referring to Tr. 41-42).

According to the Commissioner, fingering – i.e., "working primarily with

fingers"– is "Not Present" and "does not exist" in that job.  Dictionary of

Occupational Titles § 788.687-106, 1991 WL 681197.

     Plaintiff argues that, because the ALJ did not rely on a medical opinion, he

was not entitled to discount the credibility of her allegations that she had

unspecified limitations beyond those set forth in the RFC finding (Pl's Mem. 16-

19).  The Commissioner urges the Court to reject this claim of error based on *Rudd*

*v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719 (6th Cir. 2013), which rejected a

similar claim to that advanced by plaintiff here.  In *Rudd*, the claimant argued that

the adjudicator's finding that the claimant retained the RFC to perform the

requirements of light work was improper because "no physician opined that Rudd

was able to perform" those requirements.  *Rudd*, 531 Fed. Appx. at 728.  The Sixth

Circuit squarely rejected that argument:

> [T]he ALJ is charged with the responsibility of
> determining the RFC based on her evaluation of the
> medical and non-medical evidence. . . . [T]he
> Commissioner has final responsibility for deciding an

>individual's RFC, SSR 96-5p, 1996 WL 374183 (July 2,
>1996), and to require the ALJ to base her RFC finding on
>a physician's opinion "would, in effect, confer upon [a
>physician] the authority to make the determination or
>decision about whether an individual is under a disability,
>and thus would be an abdication of the Commissioner's
>statutory responsibility to determine whether an
>individual is disabled."

*Id*. (affirming denial of benefits).   The Commissioner argues that the Sixth

Circuit's rejection of Plaintiff's argument dovetails with the Agency's official

guidance, which provides that "[t]he RFC assessment must be based on all of the

relevant evidence in the case record," including "[m]edical history" and "[m]edical

signs and laboratory findings."  SSR 96-8p, 1996 WL 374184, at *5 (emphasis in

original); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th

Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by

weighing the medical and non-medical evidence before rendering an RFC

finding.").

The Commissioner also maintains that plaintiff' reliance on two Sixth

Circuit cases (*Simpson* and *Porzondek*) and one case from this District (*Gross*) to

support her argument that the ALJ was required to base his credibility and RFC

findings on a medical opinion is misplaced.  The Commissioner points out that

both cases from the Sixth Circuit predate that Court's holding that an adjudicator is

not required "to base her RFC finding on a physician's opinion."  *Rudd*, 531 Fed.

Appx. at 728.  Moreover, the Sixth Circuit clearly stated in *Simpson* that an

14

adjudicator "is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inference." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009). Likewise, this Court clearly stated in *Gross* that "the social security statute does not contemplate a bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion," and the governing regulation "provides that the final responsibility for deciding issues such as the claimant's residual functional capacity is reserved to the Commissioner." *Gross*, 2017 WL 1151099, at *5 (E.D. Mich. Mar. 28, 2017). Further, the adjudicator in *Gross* – in sharp contrast to the ALJ here – "implied an expertise beyond that of an adjudicator" by emphasizing that she had worked as a nurse for 40 years, then instructing the claimant to "stand up at the hearing so she could 'look at her legs'" to evaluate her impairment. *Id.* at *4.

D.     Plaintiff's Reply Brief

In reply, plaintiff urges the Court to reject the Commissioner's suggestion that in the absence of an RFC opinion from a health professional, the ALJ properly "crafted the RFC finding by evaluating Plaintiff's 'statements concerning the intensity, persistence and limiting effects of [her] symptoms,' then finding that those statements were not credible to the extent she alleged restrictions beyond those set forth in the RFC finding (Tr. 17)." Comm'r Br. at 7. Underlying the Commissioner's position is the premise that "decisions to discount claimants'

15

credibility are entitled to such great weight and deference that they are virtually

unchallengeable." *Id.* (internal quotation marks and footnote omitted). Plaintiff

argues that, based on the deference afforded credibility determinations, the

government attempts to recast each of the first three issues raised into a mere

challenge to "virtually unchallengeable" credibility finding. *Id.* However,

inasmuch as the first two issues concern the unsustainability of the ALJ's residual

functional capacity finding in view of the medical record, *see* P's Br. at 12-8,

plaintiff contends the Court should reject the Commissioner's "recasting."

Moreover, plaintiff maintains that the Commissioner is wrong in insisting that her

allegations lack support from the objective medical evidence of record. Indeed,

regarding the left hand alone, records from 2009 confirm persistent left finger

disfigurement (Tr. 328), "chronic persistent problems with hand function present"

(Tr. 349), and extensive degenerative changes in her left hand. *Id.* The

government also endorses reliance on some pain improvement, focusing on records

from 2004 and 2005, "more than four years before the Alleged Onset Date," and

other records from years before the alleged onset of disability. Comm'r Br. at 9.

At any rate, as plaintiff explained and the Commissioner cannot persuasively

counter, the ALJ's finding of progressive improvement is actually not supported by

the medical evidence cited by the ALJ himself, such as: (1) the August 2007

progress note showing continued reduced range of motion and only slight fingering

improvement; (2) the March 2009 evaluation documenting "extensive" degenerative changes and "[c]hronic persistent problems" since reattachment surgery and (3) the observations of the claims worker that the "pointer finger in the left hand is severely bent over . . . ."  (Tr. 117, 349, 369).  According to plaintiff, the Commissioner's selective discussion avoids meaningfully addressing these errors and does not validate the ALJ's RFC finding for the relevant period.

With regard to the ALJ's own selective citation of the record and failure to evaluate evidence of greater limitation than he acknowledged, the Commissioner asserts plaintiff "does not accurately characterize the Decision" because the ALJ summarized evidence of positive straight leg raise testing and "somewhat limited and painful range of motion."  (Comm'r Br. at 10).  Plaintiff counters that citation to the aforementioned records does not cure a failure to mention the evidence when actually assessing functional abilities.  *See e.g.*, *Smith v. Schweiker*, 728 F.2d 1158, 1163 (8th Cir. 1984) (distinguishing between the summarization of evidence and the evaluation of its content).  Regarding plaintiff's left hand remaining severely deformed and nearly functionally useless, plaintiff says the Commissioner offers no convincing justification for the ALJ's finding that she can somehow frequently use the hand.  In sum, plaintiff maintains that the Commissioner's attempt to turn the lack of any medical opinions supporting the ALJ's residual functional capacity

finding into an invitation to conflate the RFC and credibility evaluations should be rejected.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status.  Title XVI benefits are available to poverty stricken adults and children who become disabled.  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th

Cir. 2007).  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the

> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

Both parties attach significance to the absence of any medical opinion in this record, although their positions on that significance are diametrically opposed. In the view of the Court, the lack of a medical opinion of any kind is a problem but neither party gets it exactly right. Though no Step 3 error was raised by plaintiff, in the view of the undersigned, there is a significant error in the ALJ's sequential analysis at Step 3 on the issue of medical equivalence, requiring remand. The Court may raise such an obvious and significant legal error *sua sponte*. *See e.g*., *Trainor v. Comm'r of Soc. Sec*., 2014 WL 988993, at *23-24 (E.D. Mich. Mar. 13, 2014) (Berg, J.) (citing *Fowler v. Comm'r v. Comm'r of Soc. Sec*., 2013 WL 537883, at *3 n. 5 (E.D. Mich. Sept. 25, 2013) (finding no error in magistrate judge *sua sponte* raising the absence of an expert opinion on equivalence).[3]

---

[3] As explained in *Fowler v. Comm'r of Soc. Sec*., 2013 WL 5372883, at *3 (E.D. Mich. Sept. 25, 2013), the Sixth Circuit has also previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been specifically objected to, and this practice is not uncommon in this District and throughout the Circuit. *See Gwin v. Comm'r of Soc. Sec*., 109 Fed. Appx. 102 (6th Cir. 2004); *see also Buhl v. Comm'r of Soc. Sec*., 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. Mar. 8, 2013) (Friedman, J.); *Bucha v. Comm'r of Soc. Sec.*, 2016 WL 5340271*3 n. 3 (W.D. Mich. 2016) ("While the failure to raise an argument often constitutes waiver, the Court will not overlook the ALJ's application of the

Without question, the ALJ expressly determined that plaintiff's conditions
did not meet Listings 1.02 (Major Dysfunction of a Joint), 1.04 (Disorders of the
Spine), and 1.05 (Amputation) and that such determinations were well within the
ALJ's purview.  (Tr. 16).  However, the ALJ then went on to conclude that
plaintiff's physical impairments did not medically equal any Listing, without the
benefit of any medical opinion and without any indication that plaintiff's
impairments, aside from obesity, were assessed in combination.  The ALJ's
analysis in this regard states as follows:

> The undersigned has assessed the effect obesity has upon
> the individual's ability to perform routine movement and
> necessary physical activity within the work  environment
> pursuant to SSR 02-1 p, considering the effect the
> claimant's weight might logically have on the ability to
> function in connection with her various severe physical
> impairments.  Considering the claimant's obesity, the
> claimant's lower extremity impairment does not meet
> listing 1.02, major dysfunction of a joint(s) (due to any
> cause), as there is no evidence of involvement of one
> major peripheral weight-bearing joint resulting in the
> inability to ambulate effectively, as defined in l.00B2b.
> The claimant's spinal impairment does not meet listing
> 1.04, disorders of the spine, as there is no evidence of
> nerve root compression with motor loss and sensory or
> reflex loss, spinal arachnoiditis requiring bihourly
> positional changes, or lumbar spinal stenosis resulting in
> the inability to ambulate effectively, as defined in
> l.00B2b.  The claimant's left hand impairment does not
> meet listing 1.05, amputation, as there is no evidence of

wrong standard in this case as a matter of law."); *Mian v. Colvin*, 2015 WL 2248750, *14 (E.D.
Tenn. 2015) ("[T]he Court may address an issue sua sponte should it find error upon review.").

> amputation of both hands; one or both lower extremities;
> one hand and one lower extremity; or hemipelvectomy or
> hip disarticulation.  Furthermore, there is no listing for
> fibromyalgia, and the claimant has experienced no effects
> as a result thereof that have caused a listing level
> impairment in any body system.

(Tr. 16).  Other than the conclusion in the heading for this paragraph, the ALJ did

conduct any analysis whatsoever on equivalency.

And, the Commissioner is required to have a medical opinion to support the

equivalency analysis.[4]  *See e.g.*, *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir.

2004) ("Whether a claimant's impairment equals a listing is a medical judgment,

and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R.

§ 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov.

22, 1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning

that an ALJ who makes a step-three equivalence determination without expert

opinion evidence runs the risk of impermissibly playing doctor); *Stratton v. Astrue*,

---

[4] The expert opinion requirement for equivalency can be satisfied by a medical advisor's signature on the Disability Determination Transmittal Form.  *Stratton*, 987 F.Supp.2d at 148 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")).  In the instant record, the Disability Determination and Transmittal Form is signed only by a Single Decision Maker and not a medical advisor.  (Tr. 69).

987 F.Supp.2d 135, 148 (D. N.H. 2012) (SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter.) (citing

*Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to

determine whether a claimant's ailments meet the Listings, expert assistance is

crucial to an ALJ's determination of whether a claimant's ailments are equivalent

to the Listings.") (citation and quotation marks omitted)).  Indeed, the applicable

regulation requires that an opinion by a medical consultant be considered in

making such an assessment:

> When we determine if your impairment medically equals
> a listing, we consider all evidence in your case record
> about your impairment(s) and its effects on you that is
> relevant to this finding.  We do not consider your
> vocational factors of age, education, and work experience
> (see, for example, § 404.1560(c)(1)).  *We also consider*
> *the opinion given by one or more medical or*
> *psychological consultants designated by the*
> *Commissioner.*  (See § 404.1616.)

20 C.F.R. § 404.1526(c) (emphasis added).  The ALJ did not obtain any opinion

from a medical advisor on equivalency in this case.

Compounding the ALJ's failure to obtain a medical advisor opinion on

equivalence as to plaintiff's severe physical impairments, is the fact that the ALJ's

resulting approach only partially addresses a critical component of the equivalence

analysis, namely the requirement to assess severe impairments in <u>combination</u>.  If a claimant has more than one severe impairment (as plaintiff does here), none of which meet a listing singularly, the Commissioner must determine whether "the combination of impairments is medically equal to the listed impairment."  20 C.F.R. § 404.1526(b)(3).  While the ALJ indicated that he considered the impact of plaintiff's obesity on each of her impairments, it does not appear that he considered all of her severe impairments in combination, beyond the conclusion-stating heading preceding the actual discussion.  *See also Wilcox v. Comm'r of Soc. Sec.*, 2014 WL 4109921, *4 (E.D. Mich. 2014) (Duggan, J.) (The ALJ failed to consider the severity of plaintiff's impairments in combination, as prescribed by 20 C.F.R. § 416.920(c)); *see also* 42 U.S.C. § 423(d)(2)(B) ("In determining whether an ... impairment or impairments are of a sufficient medical severity such that [a finding of disability would be warranted], the Commissioner ... shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.").  Likewise, there is no opinion from a medical advisor addressing whether the plaintiff's impairments <u>in combination</u> equaled a listing.

The Court recognizes that the failure to obtain a medical opinion on equivalence may amount to harmless error in some cases.  However, the instant circumstances do not appear to qualify.  *See e.g.*, *Bukowski v. Comm'r of Soc. Sec.*,

2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014).  As explained in *Bukowski*, "'the harmless error inquiry turns on whether the ALJ would have reached the same conclusions,' at Step Three had there been a medical opinion on the combination of Bukowski's psychiatric and physical impairments."  *Bukowski*, 2014 WL 4823861, at *5.  In *Bukowski*, the failure to obtain an opinion on equivalence was deemed harmless "given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability."  *Id.* at *6.

Here, unlike the facts in *Bukowski*, plaintiff has not made any such claim.  In fact, plaintiff's physical impairments in this case are her only reasons for seeking disability.  Furthermore, plaintiff's medical records contain a not insubstantial number of objective medical findings concerning her impairments.  Those findings include, amongst other things:  (1) In March 2009, Dr. Torregross reported that plaintiff has had "chronic persistent problems with hand function present" since the 2007 injury and reattachment surgery and that she had extensive degenerative changes in her left hand (Tr. 349); (2) MRI of plaintiff's lumbar spine dated March 21, 2005 revealed moderate right foraminal stenosis at L5-S1 secondary to posterior spondylitic changes and hypertrophic osteoarthritic changes, mild left neural foraminal stenosis, multilevel mild neural foraminal stenosis secondary to

disc desiccation and hypertrophy (Tr. 224-235); (3) MRI of lumbar spine from February 2009 showed mild-moderate degenerative changes with facet arthrosis and a central disc protrusion at L4-L5 (Tr. 352); (4) In an examination on August 27, 2004, plaintiff had positive straight leg raise testing, and she exhibited tenderness and an abnormal gait (Tr. 196); (5) Plaintiff underwent a series of lumbar epidural spinal injections, which afforded short-term, partial improvement (Tr. 173-201); (6) Right hip imaging showed osteoarthritis, lumbar spine MRI showed mild to moderate degeneration with facet arthrosis and a central disc protrusion, but no central stenosis, noting that plaintiff fulfills criteria for fibromyalgia (Tr. 349, 351-52); and (7) Right hip imaging in October 2009 showed moderate osteoarthritis (Tr. 339).

Notwithstanding the ALJ's analysis on meeting the listing, considering the evidence listed above, it cannot be said that the record is so lacking in medical findings that a finding of equivalence is implausible. Indeed, although certainly possible, it is not evident that a trained medical advisor, viewing the record as a whole and along a continuum, while also considering all of plaintiff's impairments in combination would have reached the same conclusion. The caution in *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) is apt here. There the Sixth Circuit observed that "courts generally should exercise caution in conducting harmless error review" of a step three finding because harmlessness "may be

difficult, or even impossible, to assess." *Id.* at 655-58. Its pertinence here is that

neither the ALJ nor this Court possesses the requisite medical expertise to interpret

the significant medical evidence in the record to determine if plaintiff's

impairments, in combination, equal any of the applicable listings. *See also Allor v.*

*Colvin*, 2016 WL 7650798, at *6 (E.D. Mich. Nov. 28, 2016) (Stafford, M.J.),

report and recommendation adopted 2017 WL 2350061 (E.D. Mich. May 31,

2017) (Cox, J.). The objective medical findings in this case simply do not lend

themselves to neat lay interpretation by the Court; and, in view of the more than

minimal number of medical findings, the Court does not deem it a prudent exercise

to analyze equivalence in the first instance. *See Freeman v. Astrue*, 2012 WL

384838 at *5 (E.D. Wash. Feb 6, 2012) ("Neither the ALJ nor this court possesses

the requisite medical expertise to determine if Plaintiff's impairments (including

pain) in combination equal one of the Commissioner's Listing."); *Brown v.*

*Comm'r of Soc. Sec*., 2014 WL 222760, at *15 (E.D. Mich. Jan. 21, 2014) (Drain,

J.) (Plaintiff's appreciable medical findings supporting her impairments, while

insufficient to meet a listing, presented sufficient evidence to suggest that a finding

of medical equivalence was at least plausible, thereby necessitating a medical

opinion on the issue).

　　　In fashioning the RFC without the assistance of a medical opinion on

equivalence of plaintiff's physical impairments and their combination, the ALJ

carved out several limiting functions based on his own interpretation of the medical records.  For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's impairments in combination and for reevaluation of the treating physician opinion, plaintiff's credibility, and the RFC in light of the new opinion.  Updated vocational expert testimony may also be necessary, based on the conclusions of the medical advisor, in particular, regarding any handling and fingering limitations.  In light of the foregoing conclusions, plaintiff's other points of error need not be more fully addressed.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 24, 2018            s/Stephanie Dawkins Davis
                                   Stephanie Dawkins Davis
                                   United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>February 24, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov